IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


PAMELA J.,[1]                                                    Case No. 3:21-cv-01654-SB

                         Plaintiff,                             **OPINION AND ORDER**

          v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                         Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

          Pamela J. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in May 1962, making her fifty-six years old on March 4, 2019, the day she protectively filed her SSI application.[2] (Tr. 15, 29, 41.) Plaintiff is a high school graduate

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-cv-00771-AA, 2013 WL 3874044, at *1 n.1 (D. Or.

who has completed some college coursework and no past relevant work experience. (*Id.* at 29, 47, 56, 195.) In her SSI application, Plaintiff alleges disability due to Type II diabetes, bipolar disorder with major depressive features, social anxiety, posttraumatic stress disorder ("PTSD"), hoarding, neuropathy, sleep apnea, binge eating disorder, agoraphobia, and sciatica. (*Id.* at 61-62, 77, 194.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on March 6, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on December 29, 2020. (*Id.* at 37-60.) On January 25, 2021, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 15-30.) On September 21, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

---

July 23, 2013) (citation omitted). As a result, the ALJ "only considered whether or not [Plaintiff was] disabled as of March 4, 2019, the date she filed her application for [SSI]." (Tr. 16, 29-30.)

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.*

at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v.*

*Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any

of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of

proof at step five, where the Commissioner must show the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If

the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d

at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is

disabled. (Tr. 15-30.) At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since March 4, 2019, the day she filed her application. (*Id.* at 18.) At

step two, the ALJ determined that Plaintiff suffered from the following severe impairments:

"[D]iabetes mellitus . . . with neuropathy; obesity[;] and anxiety[.]" (*Id.*) At step three, the ALJ

concluded that Plaintiff did not have an impairment that meets or medically equals a listed

impairment. (*Id.*) The ALJ then concluded that Plaintiff had the residual functional capacity

("RFC") to perform medium work, subject to these limitations: Plaintiff needs to be limited to

(1) frequent stooping, kneeling, crawling, or crouching; (2) occasional climbing; and

(3) occasional contact with the general public. (*Id.* at 20.) At step four, the ALJ found that

Plaintiff had no past relevant work. (*Id.* at 29.) At step five, the ALJ determined that Plaintiff

was not disabled because a significant number of jobs existed in the national economy that she

could perform, including work as a hand packager, kitchen helper, and hospital housekeeper. (*Id.*

at 30.)

**DISCUSSION**

Plaintiff argues substantial evidence does not support the ALJ's RFC assessment (or the

VE hypothetical derived therefrom), because he failed to limit Plaintiff to no more than light

work and instead found that she could perform medium work. (*See* Pl.'s Opening Br. at 5-6, 15,

ECF No. 17; Pl.'s Reply Br. at 3, ECF No. 23.) According to Plaintiff, the ALJ found that she

could perform medium work because he improperly rejected the opinion of her treating

physician, Tricia James, M.D. ("Dr. James"), and "cherry-pick[ed]" evidence. (*See* Pl.'s Opening

Br. at 6-15.) Plaintiff emphasizes that if the ALJ had not done so, he would have been required to

make a finding of disabled under Rule 202.00(c) of the Medical-Vocational Guidelines (the

"grids"). (*Id.* at 15-16.)

As explained below, the Court finds that the ALJ's decision is free of harmful legal error

and supported by substantial evidence in the record, and therefore affirms the Commissioner's

decision.

**I.    PRELIMINARY MATTERS**

At the outset, the Court notes that Plaintiff effectively challenges the ALJ's decision

based only on his discounting of Dr. James's opinion. Plaintiff does not challenge the ALJ's

decision to (1) discount Plaintiff's symptom testimony, (2) find persuasive the state agency

medical consultants' opinions, which conflict with Plaintiff's testimony and Dr. James's opinion,

or (3) discount a social worker's function report, which like Plaintiff's testimony and Dr. James's

opinion but unlike the stage agency medical consultants' opinions, endorses significant

functional limitations. (*See id.* at 4-17; Pl.'s Reply Br. at 1-5; *cf.* Tr. 21-28, 71-74, 87-89, 506-13.)

Plaintiff summarizes evidence (and discounted self-reports) in arguing that the ALJ's limitation to medium work was "not reasonable" (*see* Pl.'s Opening Br. at 6-12), but the only RFC limitations that she claims the ALJ improperly rejected (and should be credited) are Dr. James's opinions. (*See id.* at 13-15, arguing that the objective evidence supports Dr. James's opinions about Plaintiff needing to avoid prolonged standing, needing to be limited to occasional lifting and carrying of no more than twenty pounds and standing and walking for less than two hours in an eight-hour workday, and never being able to stoop, crawl, crouch, or climb, and that on remand, the ALJ should credit Dr. James's opinions about "standing, walking, and postural limitations; *cf.* Tr. 878-81; *see also* Pl.'s Reply Br. at 2, arguing that the record supports Dr. James's opinions about Plaintiff's two-hour standing and walking limitation and need to "alternate sitting and standing frequently" each workday, not the ALJ's lifting and carrying, standing, and walking limitations).[3]

Given this posture, the Court's analysis focuses on whether substantial evidence (i.e., more than a scintilla but less than a preponderance) supports the ALJ's discounting of Dr. James's opinion.

///

///

---

[3] Dr. James opined that Plaintiff would need up to thirty minutes to "alternate position before sitting again," but Dr. James also wrote "N/A" next to the question about whether Plaintiff would "need a job which permits shifting positions at will from sitting to standing or walking." (Tr. 879; *but cf.* Pl.'s Opening Br. at 12, suggesting that the RFC should have included "a sit-stand option" based on a record summary that references Plaintiff's testimony regarding post-disability onset work, which allowed her to "sit down whenever she needed").

PAGE 6 – OPINION AND ORDER

## II.    DR. JAMES'S OPINION

### A.    Applicable Law

Plaintiff argues the ALJ did not satisfy the "specific and legitimate reasons" standard in discounting Dr. James's opinion. (Pl.'s Opening Br. at 13, 15.) However, because Plaintiff filed her application on March 4, 2019 (*id.* at 1; Tr. 19), the new regulations apply here. *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's case if] she filed her claim on or after March 27, 2017," and explaining that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022) (explaining that "the standard under the new regulations . . . d[id] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).[4] Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical

---

[4]. The ALJ correctly applied the new, identical regulations applicable to SSI claims, which are codified at 20 C.F.R. § 416.920c. (*See* Tr. 20, 25-29.) *See also Reynolds v. Kijakazi*, No. 21-35672, 2022 WL 4095381, at *1 (9th Cir. Sept. 7, 2022) (applying the new regulations in evaluating claims for disability insurance benefits and SSI (citing 20 C.F.R. § 416.920c and *Woods*, 32 F.4th at 791-92)); *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 (9th Cir. Dec. 27, 2022) (noting that the new, parallel regulations for claims for disability insurance benefits and SSI are "codified at 20 C.F.R. [parts] 404 [and] 416," respectively (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017))).

sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the medical source's] familiarity with the other evidence in the claim or . . . understanding of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(b)(2), 1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)," *id.* § 416.920c(b)(3), i.e., the medical source's relationship with the claimant, specialization, and facts that support or contradict the medical opinion. *Id.* § 416.920c(c)(3)-(5); *see also Woods*, 32 F.4th at 792 (making a similar observation regarding the factors in paragraphs (c)(3) through (c)(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision,

including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

      **B.**     **Analysis**

      Substantial evidence supports the ALJ's evaluation of Dr. James's opinion, and even if the ALJ did err, any error was harmless because substantial evidence supports the ALJ's finding of no disability.

      Dr. James completed a physical capacity statement on December 15, 2020. (Tr. 878-81.) Dr. James noted that Plaintiff suffers from diabetes, diabetic neuropathy and retinopathy, chronic left breast wound, bipolar disorder, and hypertension. (*Id.* at 878.) As to functional limitations, Dr. James opined that Plaintiff needs to avoid prolonged standing, can stand and walk for less than two hours in an eight-hour workday, can sit for about two hours in an eight-hour workday, and does not need a job that "permits shifting positions at will from sitting to standing or walking" but would need up to thirty minutes to "alternate position before sitting again." (*Id.* at 878-79.) Dr. James added that Plaintiff can never lift or carry fifty pounds, squat, crawl, climb, crouch, balance, stoop, operate foot pedals, or engage in repetitive pushing and pulling with her feet. (*Id.* at 879-80.)

      The ALJ addressed Dr. James's opinion (*id.* at 28-29), after explaining why he discounted evidence that is consistent with Dr. James's opinion and found persuasive state agency medical opinions that conflict with Dr. James's opinion. (*See id.* at 21-28.) Notably, and

consistent with the ALJ's RFC, the state agency medical consultants found that Plaintiff can lift and carry fifty pounds, can sit, stand, or walk up to six hours in an eight-hour workday, can occasionally climb, can frequently stoop, kneel, crawl, and crouch, can perform medium work, and needs to be limited to occasional contact with the general public. (*Id.* at 20, 71-74, 87-89.)

As to Dr. James, the ALJ explained that he found Dr. James's opinion "not persuasive" because it was "not supported by her meager and mostly unremarkable exam finding[s] . . . and [it is] not consistent with the normal physical findings of record[.]" (*Id.* at 28-29.) The ALJ further explained that Dr. James's opinion that Plaintiff "should be limited to less than sedentary exertion is not supported by her finding of normal gait and tone," and that Dr. James's opinion is "not consistent with [Plaintiff's] reported activities of daily living, or with her testimony that she is able to be on her feet for the majority of her shift while performing her current volunteer work." (*Id.* at 29, citing Tr. 212-19, 481, 620, 623, 665, 695, 700, 890-91, 902, 907; *see also id.* at 41-54, the portion of the record the ALJ cited generally as Plaintiff's "[h]earing [t]estimony").

Plaintiff argues that substantial evidence does not support these findings, and summarizes evidence that she believes rules out medium work (in particular, occasionally lifting and carrying fifty pounds and standing and walking for six hours in an eight-hour workday). (*See* Pl.'s Opening Br. at 7-15); *see also Terry v. Saul*, 998 F.3d 1010, 1014 (9th Cir. 2021) ("[T]he Commissioner [has] interpreted 'medium work' to 'require[ ] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday.'" (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)); SSR 83-10, 1983 WL 31251, at *6 ("The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

///

In doing so, however, Plaintiff acknowledges that it is "unclear" what the basis is for Dr. James's opinion that Plaintiff can only sit for about two hours during an eight-hour workday, and that such a limitation is "not well supported." (Pl.'s Opening Br. at 14; Pl.'s Reply Br. at 2.) This is notable given that standing is an exertional limitation (*see* Tr. 71-72), the same type of opinion from Dr. James that Plaintiff asks the Court to credit, and suggests that the ALJ reasonably discounted Dr. James's opinion about Plaintiff's need to be limited to "less than sedentary exertion." (*Id*. at 29.) Plaintiff does not appear to argue otherwise, as she fails to otherwise address this portion of the ALJ's findings, which cites Plaintiff's inconsistent testimony and reported daily activities.

Plaintiff also argues that the state agency medical consultants' opinions "do not constitute substantial evidence when they are contradicted by all other evidence in the record." (Pl.'s Reply at 1) (citations omitted). But the state agency opinions are not "contradicted by all other evidence." On the contrary, they are consistent with unchallenged findings the ALJ made, and evidence he cited, in discounting Dr. James's opinion, other opinion evidence, and Plaintiff's symptom testimony. (*See, e.g.*, Tr. 24, citing Tr. 713, June 23, 2020, a provider who works with Dr. James "anticipate[d] [that Plaintiff's blood sugar levels would] continue to improve when she returns to regular work").

For example, in discounting Dr. James's opinion based on conflicting record evidence, the ALJ cited a September 2020 treatment, which reflected that Plaintiff's diabetes management was "complicated by," among other things, "some poor adherence to [her] med[ication] regimen." (*Id*. at 29, citing Tr. 695.) The ALJ also cited a June 2019 treatment note, which reflected that a co-provider from Dr. James's office stated that (1) Plaintiff had "a notable decline since [her] last visit" in April 2019, (2) Plaintiff "never feels rested" but was not using

her continuous positive airway pressure ("CPAP") machine, (3) Plaintiff was "[r]arely taking her medications including her insulin" and "[n]ot checking her sugars," (4) Plaintiff continued to "help her aunt and tutor once per week" and "started going to her Wednesday women's church group," and (5) she "shared [her] concern about [Plaintiff's] medication noncompliance and how that could be contributing to her worsening depression, in addition to placing her at risk for [diabetic ketoacidosis]." (*Id.* at 29, citing Tr. 665; *see also id.* at 667, failing to "objectively assess [Plaintiff's] control" because she was "not checking her blood sugars" as advised; Tr. 619, "This patient was staffed with Dr. Tricia James who agrees with my assessment and plan unless otherwise noted.").

Furthermore, the ALJ cited a November 2019 treatment note from the same provider, who noted that Plaintiff was working twenty hours a week with the Easterseals program "doing data tracking of worker[] hours etc.," taking classes at the Goodwill in the afternoon to learn to use Microsoft Office, and "missing approximately 50% of her diabetes med[ications] per week." (*Id.* at 29, citing Tr. 623.) The provider added that "improve[d] adherence . . . should help [Plaintiff's] worsening peripheral neuropathy," Plaintiff exhibited "poor" and "greatly impaired" medication adherence, and Plaintiff "admit[ted] to not using [her CPAP machine] at all[.]" (*Id.* at 623; *see also id.* at 624, November 27, 2019, a different provider from the same group observed that "[m]edication adherence and consistency [are Plaintiff's] biggest barriers to improved blood sugar control"; *id.* at 619, December 9, 2019, Plaintiff's clinical pharmacist stated that Plaintiff's diabetes was uncontrolled, Plaintiff was "still not consistent with her diabetes medications or [blood sugar] checks," and Plaintiff's diabetes was "pretty well controlled when [she is] compliant").

///

Despite the ALJ's reliance on such citations and findings, Plaintiff emphasizes that the state agency medical consultants were not able to review or account for findings "generated after January of 2020[.]" (Pl.'s Reply Br. at 2.) Plaintiff therefore argues that the favorable, diabetes-related findings that she cites, in particular those related to peripheral neuropathy and sores and calluses on her feet, warrant crediting Dr. James's opinions. (*Id.*; *see also* Pl.'s Opening Br. at 7-15, stating as much). Plaintiff fails to demonstrate harmful error, as she advocates for alternatives to the ALJ's rational (and at times, unaddressed and unchallenged) interpretation of the record. *See generally Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore [did] not demonstrate error"); *Wilcox ex rel. Wilcox v. Colvin*, No. 13-2201-SI, 2014 WL 6650181, at *5 (D. Or. Nov. 24, 2014) (explaining that the claimant's "alternative interpretation of the evidence [was] insufficient to overturn the ALJ's findings"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Accordingly, the Court concludes that substantial evidence supports the ALJ's discounting of Dr. James's opinion, and therefore rejects Plaintiff's arguments that the ALJ erred in formulating the RFC and VE hypothetical, and in turn was required to find Plaintiff disabled under Rule 202.00(c). *See Rice v. Saul*, 817 F. App'x 395, 398 (9th Cir. 2020) ("The [ALJ's VE] hypotheticals were not incomplete simply because the RFC finding did not account for all of [the claimant's] alleged limitations—the ALJ included the limitations she found supported by the record. And even assuming that the ALJ omitted some limitations, any error was harmless because substantial evidence supports the ALJ's finding of no disability."); *Shauna O. v.*

*Kijakazi*, No. 3:20-cv-01149-SB, 2021 WL 3081057, at *9 (D. Or. July 21, 2021) ("The Court concludes that the ALJ did not commit harmful error in discounting [the nurse practitioner's] opinion because she does not describe any limitations beyond those described by evidence that the ALJ reasonably discounted (i.e., [the claimant's] testimony and [two treating psychologists'] opinions).").

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 14th day of February, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge